IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DASHAWN AYERS,  :
 :
        Petitioner,  :
 :
v.  :   Civ. Act. No. 15-1081-LPS
 :
KOLAWOLE AKINBAYO, Warden, and  :
ATTORNEY GENERAL OF THE STATE OF  :
DELAWARE,  :
 :
        Respondents.[1]  :

---

Dashawn Ayers. *Pro se* Petitioner.

Kathryn Joy Garrison, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

**MEMORANDUM OPINION**

March 25, 2019
Wilmington, Delaware

---

[1] Petitioner was incarcerated at the James T. Vaughn Correctional Center in Smyrna, Delaware when he originally filed the instant Petition. He has since been transferred to the H.R. Young Correctional Institution in Wilmington, Delaware. Therefore, the Court has substituted Warden Kolawole Akinbayo for former Warden David Pierce, an original party to this case. *See* Fed. R. Civ. P. 25(d).

{signature}

STARK, U.S. District Judge:

Pending before the Court is an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Dashawn Ayers ("Petitioner"). (D.I. 3) The State has filed an Answer in opposition. (D.I. 1) For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

## I. BACKGROUND

The facts leading to Petitioner's arrest and conviction are as follows:

> In May and June 2012, the Delaware State Police led a multi-agency law enforcement team that was investigating drug sales in Kent County, Delaware. The team used wiretaps to monitor communications by Galen Brooks, the target of the investigation. On May 26, 2012, the police heard a phone conversation between Brooks and Michael Demby, which led them to believe that a drug deal was about to take place. Based on that call, the police established surveillance at the McKee Crossing Shopping Center, and at Brooks's father's home on Red Oak Drive in Dover. In the next call, the police heard Brooks telling Demby to prepare a package of cocaine and to bring it to the buyer, who would be driving a Dodge Caravan. Brooks told Demby that the price was $2400. The police saw Demby leave the Red Oak Drive home and place a package in the trunk of a Honda parked at the house. Demby and Brooks's brother, James, then got into the Honda and drove off.
>
> At the McKee Crossing Shopping Center, the police saw [Petitioner] seated in a Dodge Caravan in the parking lot. Demby and James arrived in the Honda and parked next to the Caravan. Demby got out of the Honda and got into the Caravan, while James went into a store in the shopping center. After a few minutes, Demby got out of the Caravan and went into the store James had entered. Shortly thereafter, the two men left the store, returned to the Honda, and drove away. [Petitioner], driving the Caravan, also left the parking lot.
>
> One of the officers in the surveillance unit that was following [Petitioner] instructed Delaware State Police Corporal Timothy Valeski to conduct a traffic stop on the Caravan. [Petitioner] produced his license, but when Valeski told him to exit the car, [Petitioner] put the Caravan in gear and fled before the police could search it. Valeski was instructed not to pursue [Petitioner] for public safety reasons.
>
> After the meeting at the shopping center, the police contrived to monitor Brooks' phone conversations. Demby called Brooks and told

> him that everything had gone well and that he had the money. Brooks told Demby to keep $100 for his participation and to give the remaining $2300 to Valerie Brooks, his mother. Valerie called Brooks a few minutes later to tell him that she received the money. Brooks told his mother to keep $50 for herself.
>
> [Petitioner] turned himself in to the Delaware State Police on June 1, 2012, stating that he knew he had outstanding warrants. The next day, Brooks and Demby had a telephone conversation in which Brooks agreed to give Demby one ounce of cocaine for the good work Demby had done. Police later observed an exchange of money between the two men. On June 14, 2012, the Delaware State Police arrested Demby. A Kent County Grand Jury returned an indictment against [Petitioner], Demby, Brooks, and eleven other individuals. [Petitioner] was charged with one count of Drug Dealing, one count of Aggravated Possession, and one count of Conspiracy Second Degree. Demby was charged with two counts of Drug Dealing, two counts of Aggravated Possession, two counts of Conspiracy Second Degree, one count of Criminal Solicitation Second Degree, and one count of Possession of Drug Paraphernalia.
>
> Before trial, [Petitioner] and Demby unsuccessfully moved to suppress the wiretap evidence. [Petitioner] also filed a Motion to Sever, which was denied. The jury convicted [Petitioner] on all counts. Demby was convicted of one count of Drug Dealing, one count of Aggravated Possession, one count of Conspiracy Second Degree, and one count of Possession of Drug Paraphernalia. He was acquitted on the remaining charges. [Petitioner] and Demby filed separate appeals, which were consolidated for consideration and decision.

*Ayers v. State*, 97 A.3d 1037, 1038-39 (Del. 2014) (footnotes omitted). The Delaware Supreme Court affirmed Petitioner's convictions on July 21, 2014, but held that the drug dealing and aggravated possession charges merged for purposes of sentencing. *See id.* at 1042. As a result, the case was remanded "for the sole purpose of merging the two charges and resentencing." *Id.* at 1041. On November 5, 2014, the Superior Court resentenced Petitioner to a total of twenty-seven years at Level V incarceration, suspended after eight years for decreasing levels of supervision. (D.I. 11 at 2)

On June 1, 2015, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion). The Superior Court appointed

2

counsel, but subsequently granted counsel's motion to withdraw. *See Ayers v. State*, 166 A.3d 103 (Table), 2017 WL 2729563, at *1 (Del. June 23, 2017). The Superior Court denied the Rule 61 motion, and the Delaware Supreme Court affirmed that judgment. *Id.* at *3.

## II. LEGAL STANDARDS

### A. Cognizability

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims based on errors of state law are not cognizable on federal habeas review, and federal courts cannot re-examine state court determinations of state law issues. *See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("State courts are the ultimate expositors of state law."); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding that claims based on errors of state law are not cognizable on habeas review).

### B. Standard of Review

When a state's highest court has adjudicated a cognizable federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. *See* 28 U.S.C.

3

§ 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied;" as explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011).

Finally, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *see also Appel*, 250 F.3d at 210. This presumption of correctness applies both to explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *see also Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341(2003) (stating that clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III. DISCUSSION

In November 2015, prior to the disposition of his Rule 61 motion, Petitioner filed in this Court a habeas Petition asserting the following five grounds for relief: (1) the trial court violated his Sixth Amendment right to confront witnesses against him by improperly admitting into evidence wiretap recordings of conversations between Demby and Brooks, as well as conversations between Brooks and Demby's mother Valerie, under the co-conspirator hearsay exception; (2) the State's presentation of an expert witness to interpret the language in the wiretap recordings violated his Sixth Amendment right to confront witnesses; (3) the trial court violated Petitioner's right to confront witnesses because it did not adequately establish the existence of a conspiracy under D.R.E. 801(d)(2)(e); (4) Dunn's testimony violated D.R.E. 702 and 705; and (5) the trial court's

4

admission of the wiretap recording violated the Delaware Constitution's requirement of face-to-face confrontation in criminal cases.

### A. Claims One and Two

In Claims One and Two, Petitioner contends that the Superior Court violated his right to confront witnesses against him by improperly admitting into evidence wiretap recordings of conversations between Demby and Brooks, as well as conversations between Brooks and his mother Valerie Brooks, under Delaware Rule of Evidence 801(d)(2)(e) without meeting the requirements of the rule or making a separate determination for each phone call. He also contends that the State violated his right to confront witnesses by using Agent Dunn to interpret the content of the phone calls. Petitioner presented these arguments to the Delaware Supreme Court on direct appeal, which denied them as meritless. Therefore, Petitioner will only be entitled to habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The Confrontation Clause of the Sixth Amendment provides, in relevant part, that "in all criminal prosecutions, the accused shall enjoy the . . . right to be confronted with the witnesses against him." In *Crawford v. Washington*, 541 US. 36, 59, 60 n.9 (2004), and its progeny, the United States Supreme Court held that the Confrontation Clause bars the admission of testimonial statements of witnesses absent from trial that are admitted to establish the truth of the matter asserted in the statement, unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *See also Davis v. Washington*, 547 U.S. 813, 823-24 (2006). A testimonial statement is a statement that is made during non-emergency circumstances and is a statement which the declarant would objectively foresee might be used in the investigation or

5

prosecution of a crime. *See United States v. Hinton*, 423 F.3d 355, 360 (3d Cir. 2005); *Davis*, 547 U.S. at 822.

The threshold question in every Confrontation Clause case is whether the challenged statement is testimonial and, if so, whether it was introduced to establish the truth of the matter asserted. *See Hinton*, 423 F.3d at 357. If the statement is not testimonial in nature, then the Confrontation Clause has no application. Notably, statements made by co-conspirators during the course of a conspiracy are non-testimonial. *See United States v. Bobb*, 471 F.3d 491, 499 (3d Cir. 2006) ("[P]arty admissions and co-conspirator portions of disputed tape recordings are nontestimonial.").

Here, the Delaware Supreme Court's denial of Petitioner's Confrontation Clause claim was not contrary to clearly established Federal law, because the Delaware Supreme Court cited and applied *Crawford* in reaching its decision. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The Court also concludes that the Delaware Supreme Court's decision involved a reasonable application of *Crawford* and its progeny. When affirming Petitioner's conviction, the Delaware Supreme Court explained that

> [a] statement is testimonial and implicates the Confrontation Clause where it is given in non-emergency circumstances and the declarant would recognize that his statements could be used against him in subsequent formal proceedings. By contrast, a casual remark to an acquaintance is a nontestimonial statement. Similarly, . . . statements made in furtherance of a conspiracy are nontestimonial.

*Ayers*, 97 A.3d at 1040. The Delaware Supreme Court then held that the "wiretap recordings are not testimonial under the Sixth Amendment because the declarants obviously did not expect their statements to be used against them, and because the statements were made in furtherance of a conspiracy." *Id.*

6

To begin, given Petitioner's failure to provide clear and convincing evidence to the contrary, the Court accepts as correct the Delaware Supreme Court's factual determination that Petitioner, Demby, Brooks, and Valerie Brooks were co-conspirators engaged in a conspiracy to sell cocaine. In turn, the record demonstrates that the statements in the wiretap recordings were made by co-conspirators who did not believe their statements were being heard by the authorities and would be available for use in a prosecution. Therefore, the Court concludes that that Delaware Supreme Court's holding regarding the non-testimonial nature of the wiretap recordings constituted a reasonable application of *Crawford* and its progeny. *See United States v. Hendricks*, 395 F.3d 173, 181 (3d Cir. 2005) (finding surreptitiously recorded conversations more similar to "a casual remark" than to "formal statement.").

However, Petitioner contends that, even if the wiretap recordings could be considered non-testimonial, the admission of the statements in his case violated the Confrontation Clause because expert testimony explaining what the coded language in the wiretaps meant rendered the wiretap statements testimonial in nature. *See Ayers*, 97 A.3d at 1040. For instance, the State called Special Agent Jeffrey Dunn of the Drug Enforcement Administration as an expert in drug investigations. Dunn testified that, based on his training and experience and his review of the recordings, Brooks and Demby were discussing a drug deal that involved the sale of cocaine. The pertinent portion of Dunn's testimony on direct examination is set forth below.

> Q. Are you able to --- there's a discussion of "three." Are you able to tell the jury what they're talking about when they talk about three? Three what?
>
> A. Yes. They're referring to three grams of a cutting material, and you could hear the one voice say GNC, which refers to the retail store, General Nutrition Center. A cutting material is a substance such as a dietary supplement that has a white powdery texture similar to cocaine that is used to add to actual cocaine that increases a drug dealer's profit.

7

> Q. When they talk about three germs, what does that mean?
>
> A. Three grams. They're going to use three grams of that cutting material to add to the cocaine.
>
> Q. When the call says, "Take three germs and put it on the scizzy," do you know what that means?
>
> A. Yeah. It's a --- scizzy is referring to a scale so that they get the proper weight. Three grams is the proper weight.

(D.I. 14-3 at 30-31) Dunn also testified about the price and quantity of the cocaine. (*Id.* at 31-35)

The Delaware Supreme Court rejected Petitioner's argument that Dunn's expert interpretive testimony transformed the wiretaps into testimonial statements, explaining:

> It is true that Dunn may have misinterpreted the coded language, but his interpretation was open to challenge during cross-examination. In addition, [Petitioner] could have presented his own witnesses to testify that the wiretap recordings meant something entirely different. In sum, admission of the wiretap recordings did not violate the Sixth Amendment.

*Ayers*, 97 A.3d at 1040.

The Court concludes that the Delaware Supreme Court reasonably applied *Crawford* and its progeny in holding that Dunn's interpretive testimony did not transform the wiretap recordings from non-testimonial to testimonial statements. As the Delaware Supreme Court noted, Petitioner could have challenged the witness' interpretations through cross-examination and also could have presented his own witnesses to testify that the wiretap recordings meant something entirely different. Since the wiretap conversations remained non-testimonial, the Delaware Supreme Court's rejection of the instant Confrontation Clause claim does not warrant habeas relief under § 2254(d).

### B. Claims Three, Four, and Five

The arguments in Claims Three, Four, and Five challenge the trial court's evidentiary rulings under the Delaware Rules of Evidence. Although he mentions his right to confront witnesses in Claim Three, the essence of the argument is that the trial court improperly applied Delaware law. Therefore, the Court will dismiss Claims Three, Four, and Five for failing to assert issues cognizable on federal habeas review.

## IV. PENDING MOTION

During the pendency of this proceeding, Petitioner filed a Letter Motion to Amend the Petition by changing the Warden's name in the caption of the docket because his prison has changed. (D.I. 22) The Court will grant the Motion, and will direct the Clerk to make the appropriate change to the case caption.

## V. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas claim does not warrant relief. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons discussed, Petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 is DENIED without an evidentiary hearing. An appropriate Order will be entered.